THE WILLIAM TRACY.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

Nos. 224, 225.

COLLISION (§ 96*)—COLLISION AT ENTRANCE TO SLIP—NEGLIGENT MANEUVERS.

A collision between a tug coming out from a basin and a carfloat on the side of another tug, which had just passed out, *held* due to the fault of the latter in backing her tow across the narrow entrance in maneuvering to get her direction, without taking any precaution to notify vessels which might be coming out.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*]

Appeals from the District Court of the United States for the Southern District of New York.

In Admiralty. Action by the Lehigh Valley Transportation Company, as owner of the tug Statington and tow, against the tug William Tracy, for collision; and cross-libel by Thomas Tracy, as owner of the William Tracy, against the Lehigh Valley Transportation Company. Decree in favor of cross-libelant, and libelant appeals. Affirmed.

The following is the opinion of Adams, District Judge, in the court below:

ADAMS, District Judge. This is one of those collision cases which are difficult to decide, because the movements are in such restricted waters, so to speak; that is, neither vessel has any such defined course as is necessary to aid one to look into the matter very thoroughly. Moreover, this all happened within a very short space of time, which adds to the difficulty of determining how the accident happened.

It appears that the tug Slatington had taken one carfloat on her port side and gone out from Morris Canal Basin, intending to take the float to a bridge which is slightly below the entrance to the basin. In coming out she had to go around two carfloats that were lying at Pier A, which was the outermost of three piers, the carfloats lying slightly inclined into the basin. When the tug got around there her Captain says he was backing and filling in order to get into shape to make the bridge. While so doing the tug Tracy, having taken a boat into Morris Canal Basin and landed it, turned around from there and was coming out. As she was coming out another tug, the Quigley, was going into the basin from up the river and interfered somewhat with the Tracy going out.

The testimony on the part of the Tracy, is that after she had got turned around to go out of the basin she blew a long whistle to give warning that she was coming out. If I recollect the testimony correctly it is that the Quigley on coming into the basin gave the Tracy two whistles, intending to pass starboard to starboard, but did not so pass because the Tracy, not hearing the two whistles as the Quigley's Captain thinks, blew a signal of one whistle for him to pass the other way. They were thus passing in a very narrow place—of about 200 feet in width—and the Tracy contends that when in that narrow space the tug Slatington appeared above the floats which were lying at Pier A, backing up the river. The testimony on the part of the Slatington is, that she was not backing up the river at that position. It seems to me that is the pivotal point in this case. If the Slatington was backing and filling across the mouth of that slip she should then have had a lookout on her stern and should have been giving signals to any vessels that might wish to come out of the slip.

I am rather inclined to believe, from this very conflicting testimony, that it is probable that the Slatington did back up across the space which was between the boats that were lying tailing down into the slip and the carfloats which were lying at Pier A. I take it that is what the backing and filling

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

meant. that she was moving around there in order to get a proper heading for the bridge. When the Tracy came along and saw the Slatington. with her float extending above this space, she was naturally in a hazardous position. As I said a moment ago, this case turns upon whether or not the Slatington did get across that entrance to the slip. If the Slatington did get her tow across there then the collision is accounted for. I think she did. Backing and filling under those circumstances does not mean backing and filling out in the river, but such backing and filling as was necessary to make the bridge slip.

As to the testimony of the disinterested witness from the Transfer that the Slatington was not backing, his opportunities for observation were so limited that I hardly think they can overcome the natural probabilities, especially when supplemented by positive testimony from the Captain of the Tracy that the Slatington's tow suddenly appeared above the floats lying at Pier A.

My impression in this case is that the proximate cause of the collision was the backing and filling of the Slatington without taking any precaution to notify vessels coming out of the slip that she was there and would be engaged in an operation of that kind which would necessitate care on the part of the outgoing vessel.

Of course criticisms can be made on the navigation of the vessels apart from what I have said. It is nearly always so, that some criticism can be made upon the navigation of vessels engaged in a collision. but I think what I have just stated ought to determine this matter in favor of the Tracy and there will be a decree accordingly.

Robinson, Biddle & Benedict (Wm. S. Montgomery, of counsel), for appellant.

Carpenter, Park & Symmers (James Emerson Carpenter, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. Decree affirmed, with interest and costs.